IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMONT COX | : | CIVIL ACTION |
| V. | : | (Capital case) |
| MARTIN HORN, et al. | : | Nos. 00-5289, 10-2673 |

## COMMONWEALTH'S RESPONSE TO MOTION FOR DISCOVERY

Jermont Cox is a Pennsylvania state prisoner who stands convicted of two first-degree murders; he received the death penalty for one, and life imprisonment for the other. He filed the two above-captioned habeas petitions a decade apart. He now requests additional discovery as part of these federal proceedings, many years after his trial.

Cox committed these two killings in the summer of 1992, while working as an enforcer for a Philadelphia drug trafficking organization. In the first murder, Cox and an associate killed a man named Terence Stewart, by pulling up next to Stewart's car and shooting him multiple times, while Stewart's friend sat next to him. In the second murder, Cox and the same co-hort killed a man named Roosevelt Watson as the victim stood in a phone booth. Cox originally pled guilty to both murders in exchange for his cooperation in the cases against his co-conspirators; he withdrew those pleas, however, and was convicted after a consolidated jury trial in 1995. He received the death sentence for the Stewart murder, and a life sentence for killing Watson.[1]

---

[1] In 1993, Cox was convicted of a third murder, a crime that also took place in the summer of 1992. The name of that victim was Lawrence Davis. Cox received a separate

With respect to the Stewart murder, under state law exclusive appellate jurisdiction for capital cases lies with the Pennsylvania Supreme Court; that Court affirmed the judgment on direct appeal on May 3, 1999.  Commonwealth v. Cox, 728 A.2d 923 (Pa. 1999) ("*Stewart Direct Appeal Opinion*"), cert. denied, 533 U.S. 904 (2001).  On February 6, 2001, Cox filed a petition for state collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA").  The state trial court denied Cox's guilt phase claims after a hearing, on July 29, 2005.  The Pennsylvania Supreme Court affirmed the denial of PCRA relief on November 19, 2009.  Commonwealth v. Cox, 983 A.2d 666 (Pa. 2009) ("*Stewart PCRA Appeal Opinion*").

Meanwhile, the state courts also reviewed Cox's related life sentence (for the killing of Watson).  The Superior Court denied Cox's direct appeal on June 20, 1996.  Commonwealth v. Cox, 683 A.2d 309 (Pa. Super. 1996) (memorandum) ("*Watson Direct Appeal Opinion*"), and the Pennsylvania Supreme Court denied review on January 16, 1997.  A few months later, Cox filed a PCRA petition in the Watson/life case, which was denied without a hearing on June 18, 1998.  The Superior Court affirmed the denial of collateral relief on June 22, 1999.  Commonwealth v. Cox, 742 A.2d 201 (Pa. Super. 1999) (memorandum)("*Watson PCRA Appeal Opinion*") (A copy of this opinion is attached as Exhibit A).  The Pennsylvania Supreme Court again denied review, 745 A.2d 1218 (Pa. 1999) (table).  More recently, on April 17, 2009, Cox (now represented by the

---

life sentence for the Davis murder, after a bench trial.  Commonwealth v. Cox, 664 A.2d 1054 (Pa. Super. 1995) (memorandum), appeal denied, 675 A.2d 1242 (1996).  Cox recently filed a second PCRA petition in the Davis case; the Superior Court recently affirmed the denial of this late petition, and a copy of that decision is attached as Exhibit B.  Cox's habeas petition challenging his conviction for the Davis murder was denied by this Court in 2004 (E.D. Pa. 00-5188), and that denial of relief was affirmed by the Third Circuit, Cox v. Horn, 174 Fed. Appx. 84 (3d Cir. 2006).

Federal Defenders) filed another PCRA in the Watson/life case, arguing that the supposed unreliability of ballistics evidence undermines his conviction. That PCRA petition is still pending.

In federal court, the Federal Defenders represent Cox in both matters. In the life case (No. 00-5289), Cox filed his habeas petition in 2000 and he filed a supporting Memorandum of Law in 2002; the Commonwealth also filed a response in 2002, but proceedings were stayed for several years while Cox pursued relief in state court in his capital case. This Court recently restored the life case to the active docket. In the death penalty case (No. 10-2673), Cox filed his habeas petition in November of 2010. He has not yet filed a supporting memorandum of law.

In July of 2011, Cox filed a Motion for Discovery, relating to both cases. Specifically, he asks for two categories of discovery: (1) ballistics evidence: (2) "police investigatory files." *Motion* at 7-9, 10-11.

**I.  Principles underlying the availability of discovery in federal habeas**

"A habeas petitioner, unlike the civil litigant in federal court, is *not* entitled to discovery as a matter of ordinary course." Peterkin v. Horn, 30 F. Supp.2d 513, 516 (E.D. Pa. 1998) (emphasis added), citing Bracy v. Gramley, 520 U.S. 899, 117 S. Ct. 1793, 1796-77 (1997). This is because factual development is supposed to happen in *state* court, and an order of habeas discovery implies that state processes were somehow inadequate. That is, if a habeas petitioner did not receive certain documents during pre- or post-trial state litigation, that means either (1) he did not ask for this discovery in state court; (2) his request was not properly made under state law; and/or (3) the state court found that he was not legally entitled to this discovery. Any one of these three

possibilities demands at least an explanation from the petitioner before the federal court may override the state court process and order new discovery.

Even before the current federal habeas deferential standards ("AEDPA") became effective in 1996, the Supreme Court had explained the principle that *facts* pertaining to federal claims raised by state prisoners must first be developed in state court. Keeney v. Tamaro-Reyes, 504 U.S. 1, 11-12 (1992) (habeas petitioner's failure to develop pertinent facts in state court amounts to the default of claim). This principle was codified and made stronger under AEDPA. The new standard reframes the inquiry and directs the federal habeas court to assess the reasonableness of the state court determination in light of governing Supreme Court precedent. See Terry Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000). This new standard serves to protect the important "presumption of finality and legality that attaches to a conviction at the conclusion of direct review." Calderon v. Coleman, 119 S. Ct. 500, 503 (1998) (citation omitted). Allowing a fresh start to discovery, years after the trial, and after years of state court review have ended, obviously runs counter to any "presumption of finality."

The Supreme Court has recently explained again that where a final state judgment and conviction is at issue, the pre-trial rights and duties pertaining to discovery simply do not apply. The question here is narrower – where the state provides procedures that are not "fundamentally inadequate" to vindicate federal rights, those state procedures must be respected, and federal courts are not simply an alternative venue for factual development of criminal cases. District Attorney's Office v. Osborne, 129 S. Ct. 2308, 2320 (2009). This includes discovery procedures: once a defendant has been convicted in state court, pre-trial rules no longer apply, and neither Brady v. Maryland nor any other federal

4

principle requires that he be provided with all material evidence around which he might build a claim. Id.; see also id. at 2324-26 (Alito, J., with Kennedy, J., concurring) ("[w]e have long recognized the need to impose sharp limits on state prisoners' efforts to bypass state courts with their discovery requests … [Brady] claims should be brought in habeas" subject to "exhaustion requirements and discovery limits").

Cox's legal argument is supported almost entirely by Habeas Rule 6, which allows discovery upon a showing of "good cause." *Motion* at 4-5. But Rule 6, which was enacted before the AEDPA, does not justify this kind of open-ended discovery.[2]

In reality, the "good cause" requirement means that the applicant must do more than ask for discovery and assert that it would be helpful. He must identify the claims for which discovery is sought; why the discovery could aid the petitioner in proving his claim, that is, that the state court acted unreasonably; whether the discovery was sought in state court, and if not, why not; whether the petitioner is entitled to further factual development of the claim(s) in federal court; and whether the claims are defaulted or untimely. See Michael Williams v. Taylor, 529 U.S. 420, 431-32 (2000) (prisoner must be diligent in developing state court record in order to present these facts to federal court); Marshall v. Beard, 2004 U.S. Dist. LEXIS 17507, *6-9 (E.D. Pa. 2004)

---

[2] It is worth noting that The two Supreme Court cases on which Cox primarily relies to define the "good cause" standard, Harris v. Nelson, 394 U.S. 286 (1969), and Bracy v. Gramley, 520 U.S. 899 (1997), were both pre-AEDPA cases. But the focus of federal habeas review has now been shifted, and it follows that discovery cannot be routinely granted, especially before preliminary questions of exhaustion and default have been addressed. Finally, in both Harris and Bracy, discovery was apparently granted *after* the petition had been answered and the claims weighed, where here petitioner seeks discovery before he has even filed a supporting memorandum in the death penalty case.

(Kauffman, J.) (where state court reasonably rejected claims, additional discovery in capital case would not alter outcome and is properly denied); Abu-Jamal v. Horn , 2001 WL 827468, *2 (E.D.Pa.) (Yohn, J.) (death-sentenced petitioner who "seeks discovery regarding new evidence to support the merits of a claim, under AEDPA standards, ... cannot establish good cause where he fails to demonstrate that he is entitled to a hearing at which the discovered evidence may be admitted"); Holloway v. Horn, 161 F. Supp.2d 452, 467, 509 (E.D. Pa. 2001) (Van Antwerpen, J.) (discovery order in capital case appropriate only *after* initial questions of default, and contours of particular claims, are considered), *rev'd on other grounds*, 355 F.3d 707 (3d Cir. 2004).  See also Marshall v. Beard, 2010 WL 1257632 (E.D. Pa. 2010) (Golden, J.) (denying Federal Defenders' request for entire homicide file in capital case, noting the lack of specificity of the requests, the petitioner's failure to develop the record in state court, the prior discovery provided in state court, and problems posed by exhaustion, default, and the passage of time).  It is ultimately Cox's burden to show that this case is *not like* most other habeas cases, and that these unusual circumstances justify federal court discovery all these years after trial.[3]  Cox has not made this showing.

---

[3] Cox cites a number of cases from other courts in this district which, he says, suggesting that discovery is granted in local habeas cases as a matter of routine. *Motion* at 5-6 n.4. But his description of these other cases is misleading.  For one thing, in several of them, the bulk of the requests were *denied*, including requests for the entire police homicide file, which is the center of Cox's demands.  See Marshall v. Beard, 2004 WL 1925141 (E.D. 2004) (denying records pertaining to medical examiner's report, police interrogations, and jury selection in other cases), and 2010 1257632 (E.D. 2010) (denying production of police investigative file and evidence concerning particular detectives' patterns of conduct); Washington v. Beard, No. 07-cv-3462 (E.D. Pa. Jan. 19, 2010) (Stengel, J.) (denying production of police homicide file).  Many of these cases also involved production of particular items, like the prosecutor's notes of jury selection, *after* an evidentiary hearing had been granted, *after* questions of default had been addressed, and/or *after* the court decided that the state courts' handling of the claim(s) in question

It is especially not routine to order production of entire police files, which is one of Cox's requests. If state prisoners can demand and receive *entire files* in federal court, demands not made in state court, in support of claims that were reasonably *denied* in state court, and which are based on simple speculation (for example, the police "may" have been hiding something, or other incidents "might" have had something to do with this one), then it is unclear what the state rules of discovery are *for*, except to delay the real action until the federal habeas petition is filed.

Finally, even *without* the significant restrictions on habeas discovery, the Defenders' request would not be justified. The Third Circuit has held that Brady "does not require that the prosecution make the file available for the defendant's general perusal." United States v. Dent, 149 F.3d 180, 191 (3d Cir. 1998). See also Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[w]e have never held that the Constitution demands an open file policy"). In other words, *federal* criminal defendants do not have access to the authorities' entire file, in the absence of particular special circumstances. A *state* defendant, who has already received discovery and been convicted, and who has litigated his case for years in state court, should not be given the benefit of a more generous file-on-demand policy.

---

was somehow unreasonable. See, e.g., In re Horn, 185 Fed. Appx. 199 (3d Cir. 2006) (denying mandamus relief on jurisdictional grounds) (district court granted discovery only *after* determining that evidentiary hearing was appropriate); Holloway v. Horn, 161 F. Supp.2d 452, 509-510 (E.D. Pa. 2001) (same). The lesson is not that wide-ranging discovery before any briefing is "routine" (it is not routine), but that requests must be carefully and individually examined, in light of the particular claim at issue, its litigation history in state court, and the petitioner's diligence in pursuing it.

Police files are a critical resource that implicate important confidentiality and investigatory interests, and their disclosure must be considered with care and restraint. Cox has not shown that his requests are remotely justified.

## II.  Ballistics evidence

First, Cox asks for all documents relating to the ballistics evidence in this case, and he also requests access to the ballistics evidence itself, for testing purposes. *Motion* at 9.  He asks for these items in support of his claims that his trial lawyer was ineffective for failing to "conduct an independent investigation" of the Commonwealth's ballistics evidence. *Motion* at 7.

Briefly, the ballistics evidence at trial established that the .38 caliber bullets recovered from Watson's body had been fired from the same gun as the .38 caliber bullets recovered from Lawrence Davis, Cox's third murder victim.  This evidence was admitted "to prove [Cox's] identity and access to the murder weapon." *Stewart Direct Appeal Opinion*, 728 A.2d at 932.  Cox first argued in state court that this evidence should not have been admitted because it was *irrelevant*; after the state supreme court rejected this claim,[4] Cox more recently raised the argument that his lawyer should have challenged the *reliability* of the ballistics evidence, and this is the claim for which he wants discovery.

Cox does not discuss the state court litigation of this claim at all, and it is easy to see why:  his similar claims have been soundly and repeatedly rejected by the state

---

[4] See *Stewart PCRA Appeal Opinion*, 983 A.2d at 683 (holding that ballistics evidence was relevant, as part of rejection of claim that Cox's direct appeal counsel was ineffective for failing to challenge admissibility of this evidence).

8

courts. But as a prerequisite to discovery in federal habeas review, Cox must at least attempt to explain why the pre-trial discovery was not sufficient, and why the state courts rejected his claims; otherwise, he is simply asking this court to overrule the state courts without any real discussion, under the banner of the "good cause" standard.

This is part of Cox's larger failure to meaningfully address exhaustion. Indeed, Cox's entire discussion of the subject in his recently-filed Watson/life *Petition* is his 1-page "Statement on Exhaustion," in which he simply claims that it is the Commonwealth's burden to raise any exhaustion issues as an affirmative defense. *Petition at 3-4*. This is flatly improper. The local rules governing capital habeas petitions – rules that were generated after careful study by a group which included judges, prosecutors, and defense counsel, including petitioner's institutional counsel – states that in the *petition*, and not later, the prisoner "must identify at what stage of the proceedings each claim was exhausted in state court." Local Rule Civ. P. 9.4(2)(b). Furthermore, exhaustion and default are not "affirmative defenses" in any meaningful sense: the habeas statute itself *requires* exhaustion as a prerequisite to relief, 28 U.S.C. § 2254(b)(1)(A), and directs that the State "shall not be deemed to have waived the exhaustion requirement" unless the State "expressly waives the requirement," 28 U.S.C. § 2254(b)(3). Exhaustion must be addressed as a threshold matter, not sometime later, and it is neither lawful nor fair to force the Commonwealth to guess what theories of exhaustion Cox will rely upon, or where he raised his claims.

With respect to the ballistics claim, there has been extensive state court litigation on the subject. Most obviously, Cox raised a ballistics/ineffectiveness claim during PCRA review of his capital case, and the state courts *rejected* it on the merits. The

Pennsylvania Supreme Court explained that, generally, defense counsel will not be deemed ineffective for failing to call an expert merely to "critically evaluate expert testimony which was presented by the prosecution." *Stewart PCRA Appeal Opinion*, 983 A.2d at 692. There must be something more – some specific reason to conclude that such investigation would have been fruitful. But Cox's trial counsel "testified at the PCRA hearing that she did not have the ballistics evidence tested because she saw nothing in the report prepared by the Commonwealth's ballistician that was of import or that required further investigation." Id.

Cox's only argument in state court (and he repeats these arguments here) is that this kind of ballistics evidence can be unreliable as a general matter; in support of this argument, he relies on a report issued by the National Academy of Sciences. He does not attach this report, so it is difficult to address it. From Cox's description, the report seems to conclude that "much forensic evidence – including, for example, bite marks and firearm and toolmark identification" – is often introduced in criminal trials as establishing a definitive match for purposes of identification, when the real significance of such evidence should be more "modest." *Motion* at 9. But these are general assertions, unconnected to this case; Cox has not explained whether (or if) the evidence in his own case was unfairly characterized, or if the tests were unreliable. And even *without* this evidence, Cox had been connected to the murder of Davis *by his own confession*; he had also been *convicted* of that murder in a different trial. For that reason, the state supreme court concluded, "counsel's decision not to seek an independent review of the ballistic evidence was reasonable." 983 A.2d at 692. The Court also affirmed the PCRA court's denial of Cox's request for ballistics discovery: "[t]he assertion that independent testing

10

might result in the discovery of exculpatory evidence is not a sufficient reason to overturn the decision of the PCRA court." Id.

Cox does not explain why this conclusion was unreasonable. If it was reasonable, Cox is not entitled to discovery. Indeed, if he *did* manage to put together a claim that relied on facts or evidence not before the state court, that would itself preclude habeas relief on the new claim, at least without some showing of "cause and prejudice" to justify his failure to present the same claim to the state courts. Cullen v. Pinholster, ---U.S.---, 2011 WL 1225705, *8, 11 n.10 (April 4, 2011).

More recently, Cox raised a similar claim in connection with the Watson/life case in 2009, when he filed a PCRA petition (apparently his third in that case) arguing that new scientific developments have shown that ballistics evidence is often unreliable. That petition is still pending in the Philadelphia Court of Common Pleas, although a few weeks ago the PCRA court issued a notice under Pa. R. Crim. P. Rule 907 indicating its intent to dismiss the petition as untimely. (About two weeks ago, Cox filed a response to the Rule 907 notice, but there has been no decision yet.)

Finally, Cox raised similar arguments in connection with his third murder conviction, that is, the murder of Lawrence Davis, which was connected to the murder of Watson by the disputed ballistics evidence. In 2009, the Superior Court affirmed the denial of PCRA relief on these claims. Commonwealth v. Cox, No. 113 EDA 2009 (Pa. Super., Sept. 23, 2009) ("*Davis PCRA Opinion*") (A copy of this decision is attached as Exhibit B). The Superior Court held that this third PCRA was both untimely and meritless. *Davis PCRA Opinion* at 2, 5-7. Cox argued that his PCRA petition was timely because it depended on *new facts*, specifically recent developments generally

11

undermining the credibility of ballistics evidence.  He cited the same National Academy of Sciences study he relies on here, which was published in 2009; in addition, he relied on two media pieces:  (1) an article in the *Washington Post* discrediting an FBI ballistics identification method, which appeared on November 19, 2007, and (2) an accompanying story on the *60 Minutes* television program the previous day.  *Davis PCRA Opinion* at 3-4.  The Superior Court noted that Cox had missed the 60-day window for filing PCRA petitions based on new evidence – he filed his collateral petition more than 60 days after the *Post* article and the *60 Minutes* show.  The court also found, in the alternative, that Cox had suffered no prejudice from counsel's failure to challenge the reliability of the ballistics evidence.  *Davis PCRA Opinion* at 6-8.  The court reasoned that there was other, strong evidence that Cox had killed Davis, and had done so intentionally, so it would not have accomplished anything to challenge the ballistics evidence.

Cox does not mention any of this background, but it is important.  The state courts *rejected* these claims, and *rejected* this same discovery request.  If a federal court can simply overrule that decision, without any deference to the state courts' decisionmaking, then the rules of deference and exhaustion add up to little.  Cox has made no attempt to argue that the state courts were wrong to reject these requests, let alone unreasonable.  The state courts have held that any challenge to the ballistics evidence relating to the Davis murder, is untimely; the state PCRA court has indicated that it is poised to make the same ruling with respect to the Watson/life case; and as for the Stewart/death case, the state courts rejected the discovery request because Cox made no allegations about the unreliability of the ballistics evidence in *this* case, as opposed to generally.  The Superior Court also held that discovery was inappropriate, because there was plenty of evidence

12

connecting Cox to all three murders beyond mere ballistics, so Cox had not demonstrated sufficient prejudice.

This Court should not accept Cox's invitation to ignore all of this litigation, which he has not even mentioned, especially based on a scientific report he has not even *proffered*. This is too casual an approach to the limitations on habeas review.

## II.  Police Investigative Files

Cox also requests access to "all police reports and/or documents." *Motion* at 11-12. He attempts to justify this request on the basis of several claims regarding "significant exculpatory evidence:" an alibi argument that Cox's lawyer failed to make with respect to the Watson shooting, "favorable treatment" supposedly given to Commonwealth witnesses, and a challenge to Cox's confession to the Stewart murder. *Motion at 10*. This set of discovery requests appears to be limited at first, but in fact Cox is asking for the entire internal homicide file, as far as the Commonwealth can tell.

As noted above, however, federal law does not require disclosure of entire police files, not in federal prosecutions, and certainly not in state prosecutions being reviewed on habeas. The requests must be reasonably specific, and related to specific claims. While Cox mentions a few claims which, he contends, justify this discovery, he once again entirely omits any discussion of the state court litigation, and once again it falls on the Commonwealth to address this topic in the first instance. For that reason alone, this discovery request should be denied, at least until after the claims have actually been briefed.

Cox argued on direct appeal in his death penalty conviction that his lawyer was ineffective for failing to cross-examine two witnesses about benefits given to them by the

13

Commonwealth in their other criminal cases.  The state supreme court rejected this claim, holding that there was no prejudice because there was plenty of independent evidence of Cox's motive for the killings, which was the primary thrust of these witness's testimony.  *Stewart Direct Appeal Opinion*, 728 A.2d at 933.  Cox does not explain why this was unreasonable; if the state court decision was reasonable, then Cox is not entitled to further discovery on the claim, and in any event this Court would not be empowered to consider the new evidence absent unusual circumstances.  Cullen, 2011 WL 1225705, *8-11.

Cox does not say where (or if) he exhausted the "alibi" claim.  Cox did raise an alibi claim in the Watson/life case, on PCRA; he argued that his trial lawyer (and direct appeal counsel) was ineffective for not presenting the testimony of an alibi witness named Kevin Tadlock; Cox attached a statement from Tadlock to his PCRA petition, in which Tadlock said that he and Cox were out drinking together when Watson was killed.  The Superior Court rejected this claim, however, because the statement from Tadlock was unsigned and otherwise improper.  *Watson PCRA Appeal Opinion* at 3.  Cox does not mention the state court's decision, let alone why this Court should overlook it.  Nor does Cox explain how discovery could help this claim – Cox obviously already knows about Tadlock and there is no indication that there is anything in the police file relating to him.

Finally, Cox suggests that discovery of all police documents is justified by his claim that his confession to the Stewart shooting contained facts that "contradicted other evidence in the case." *Motion* at 10.  He includes a citation to a claim in the Stewart petition, in which he argues that his lawyer should have attacked the prosecutor's

14

suggestion that part of Cox's confession to the Stewart murder was false (that is, that he wasn't himself the shooter).  Once again, Cox makes no attempt to explain where he raised this claim in state court, and the Commonwealth believes he never properly presented any such argument.  That means that the claim is defaulted, and no discovery is available.  In any event, it is unclear why discovery would advance this claim in the first place – the claim is that Cox's trial counsel should have introduced *readily available* evidence that supported Cox's confession; the claim is not that the *police* had information contradicting the prosecution's theory of the case.  (This is an ineffectiveness claim, after all.)  If Cox simply means that the police might have secret information to support his most recent factual theory, he has no actual reason to think this is true – except for his general theory that the police are probably hiding something, because that is what police do.  That is not good enough for a habeas discovery request.

## **CONCLUSION**

WHEREFORE, respondents respectfully request that this Court deny the motion for discovery.

>Respectfully submitted,
>
>*/s/ Thomas W. Dolgenos*
>
>THOMAS W. DOLGENOS
>Chief, Federal Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMONT COX | : | CIVIL ACTION |
| V. | : | |
| MARTIN HORN, et al. | : | Nos. 00-5289, 10-2673 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Response to Petitioner's Motion for Discovery was duly served on September 6, 2011, by this Court's ECF system, and in addition one copy was served United States Mail, first class postage prepaid, on counsel for petitioner:

Stuart Lev, Esq.
Federal Community Defender Office
 for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
The Curtis Center, Suite 545-W
Independence Square West
Philadelphia, PA 19106

*/s/ Thomas W. Dolgenos*
_____
THOMAS W. DOLGENOS
Chief, Federal Litigation